**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Raul Robert CARRILLO, Defendant-Appellant.**

No. 72–2182.

United States Court of Appeals,
Ninth Circuit.

Jan. 8, 1974.

As Amended on Denial of Rehearing
June 10, 1974.

David M. Rothman (argued), Beverly Hills, Cal., for defendant-appellant.

William D. Keller, U. S. Atty., Lawrence W. Campbell, Terry W. Bird, Asst. U. S. Attys. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and SKOPIL,* District Judge.

## OPINION

HUFSTEDLER, Circuit Judge:

We reverse Carrillo's conviction for failure to report for induction (50 U.S. C. App. § 462), because the order to report did not create a continuing duty to report after the expiration of the selective service law pursuant to which the order was issued.

On March 12, 1971, Carrillo was ordered to report for induction on March 24, 1971. He did not report. He was not indicted for that failure. Nor was any further formal order to report for induction sent to Carrillo. Instead, on October 6, 1971, Carrillo's local board sent him a letter stating that he had a continuing duty to report and directing him to report for induction on October 26, 1971. He was indicted for failure to perform his duty (based on the March 12, 1971, order) to report on October 26, 1971.

Between the time the induction order was sent and the time the continuing duty letter was mailed, two relevant changes in the selective service laws occurred. The March 12 order was issued under the Military Selective Service Act of 1967; section 17(c) of the Act terminated the local board's induction authority on July 1, 1971 (Act of June 30, 1967, Pub.L. No. 90–40, § 1(12), 81 Stat. 100). The Draft Extension Act of 1971 (Pub.L. No. 92–129, § 101(a)(35), 85 Stat. 348) amended section 17(c) to extend induction authority into 1973. The 1971 law, however, was not enacted until September 28, 1971. The 1971 Act was stated to be effective as of July 2, 1971. Carrillo's conviction cannot stand unless (1) the initial order to report created a duty to report that continued after authority to induct under the 1967 Act expired, or (2) the 1971 Act revived the duty imposed by the order issued under the 1967 Act. The history and structure of the selective service laws forbid both conclusions. Congress intended that orders to report for induction would have no vitality absent present authority to induct.

In 1948, Congress established the Selective Service System to gather and process information about males in the United States and to effect their induction into the nation's armed forces. (Selective Service Act of 1948, ch. 625, 62 Stat. 604.) The 1948 Act was to terminate on the second anniversary of its enactment. The termination provision provided that most of the provisions of the Act were to become inoperative on that date. The few provisions excepted from this termination merely dealt with matters collateral to the operation of the Selective Service System. (*Id.* § 17(b).) When in 1950 Congress extended the operation of the Act, there were expressions of concern about the scope of the termination provision. It was said that to allow the law to lapse would destroy the selective service infrastructure and thereby impair the nation's ability to mobilize men with sufficient rapidity in times of emergency. (H.R.Rep. No. 2018, 81st Cong., 2d Sess. 9–11 (1950); S.Rep. No. 1784, 81st Cong., 2d Sess. 8 (1950), 1950 U.S.Code Cong.Serv., p. 2677.) Apparently in response to such concerns, the termination provision was amended in 1951 to its present form.

■ The functional difference between the 1948 and the present termination provisions is instructive. Under the old provision, the entire operation of the Act ceased; under the new, information gathering and preliminary processing continues (McGrew v. Tarr (9th Cir. 1972) 469 F.2d 1087), and only the final product of the process, induction, ceases. Under the new provision, there-

---

* District of Oregon, sitting by designation.

fore, a structure would remain that would allow speedy mobilization of manpower should the need arise. After any new grant of authority to induct, only those few steps in processing that must necessarily immediately precede induction need be taken before the inductee is fully processed; all else would have been performed prior to the new grant of authority to induct. This comparison indicates that section 17(c) is designed to terminate the operation of the Act except insofar as is necessary to preserve a structure that allows speedy induction of men into the armed forces. The effect of section 17(c) on induction orders issued prior to a termination of authority to induct depends, therefore, on whether a local board's ability to order men to report for induction is more appurtenant to the continuing infrastructure or to the end product (induction).

A duty to report for induction can serve only two functions: to make men available for final evaluation of their suitability for military service and to make men available for immediate induction into the armed forces. The latter function is clearly related to the power to induct rather than to the selective service infrastructure; it is no more than a necessary procedural adjunct to the fact of induction. The significance of the evaluation function is also inextricably tied to the prospect of immediate induction. The distinction between a preliminary and a final determination of suitability for military service is the determination's temporal proximity to actual induction. Any determination of fitness made without the possibility of immediately subsequent induction is by its nature preliminary. Thus, an order to report for induction in the absence of authority to induct is incapable of facilitating a final determination, for, absent power to induct immediately those found suitable, the "final" evaluation would have to be repeated whenever power to induct immediately was granted. Nor is the power to order registrants to report for induction helpful in making preliminary determina-

tions, for other local board orders (e. g., orders to report for physical examination) exhaust the preliminary tasks that the board may perform. The only conceivable functions of an order to report for induction, therefore, are capable of being performed only when there is current authority to induct; as a consequence, section 17(c) should be so construed that, whenever it terminates authority to induct, it also terminates local boards' authority to order registrants to report for induction.

This construction finds support not only in the history of the selective service laws, but also in the structure of the Military Selective Service Act of 1967, the manner in which local boards are given power to order registrants to report for induction. The Act nowhere explicitly provides for such power. Rather, the power finds its immediate source in the regulations. (*See* 32 C.F.R. 1632.1.) The regulations, however, can confer that power only for so long as the regulations are proper under the statute. The statutory authority for the regulations' grant of power to order registrants to report for induction must be derived from three provisions of the Act. First, section 4(a) provides in pertinent part that "[t]he President is authorized . . . to select and induct into the Armed Forces of the United States for training and service in the manner provided in this title . . . such number of persons as may be required to provide and maintain the strength of the Armed Forces." (50 U. S.C. App. § 454(a).) Second, section 10(b)(1) authorizes the President "to prescribe the necessary rules and regulations to carry out the provisions of this title." (*Id.* § 460(b)(1).) Third, section 10(c) provides that "[t]he President is authorized to delegate any authority vested in him under this title, and to provide for the subdelegation of any such authority." (*Id.* § 460(c).) Thus, the local boards have no power to order registrants to report for induction except as is provided for in the regulations, and the regulations so providing

are of force only insofar as they are "necessary . . . to carry out the provisions of [the Act]." The regulations authorizing the issuance of orders to report for induction find their only basis in the statute in the President's authority to induct. When, by operation of section 17(c), the President and his delegates are divested of authority to induct, his delegates are necessarily deprived of any authority dependent upon the authority to induct. The conclusion is inescapable that on July 2, 1971, section 17(c) canceled Carrillo's induction order by operation of law.

■ The Government argues that even if the termination of induction authority under the 1967 Act vitiated the order to report, the 1971 Act revived the defunct order by retroactively nullifying the termination of induction authority under the 1967 Act. Nothing in the text of the 1971 Act nor in its legislative history supports the Government's interpretation. The 1971 Act simply reinstated the local board's authority to induct; it did not purport to revive orders based on previously expired grants of authority.[1] The House and Senate Conference Committee Report on the 1971 Act unequivocally states the legislative intent in creating the limited retroactivity of that Act:

"In addition, the conferees wish to point out that the amendment extending the authority to induct persons for training and service is retroactively effective to July 2, 1971. The intent of the conferees in making the effective date retroactive is to provide that the period beginning July 2, 1971 and ending on the date of the enactment of H.R. 6531 be treated as an induction period *solely* for the purpose of insuring that there will be no lapse in the entitlement of any member of the armed forces, or his estate, to the Federal tax benefits which are available to servicemen and their states [*sic*] as a result of certain service during an induction period." (H.R. Rep. No. 92–433, 92d Cong., 1st Sess. 34 (1971), 1971 U.S.Code Cong. & Ad. News pp. 1510–1511 (emphasis added).)

Carrillo's remaining contentions require no discussion in view of our disposition of the case.

Reversed.

---

1. This conclusion is not inconsistent with McGrew v. Tarr (9th Cir. 1972) 469 F.2d 1087. *McGrew* decided issues different from those addressed in this case. *McGrew* acknowledged that there was an expiration of power to induct under the 1967 Act. (*Id.* at 1089.) Our conclusion that Carrillo's order to report for induction was cancelled on July 2, 1971, is therefore compatible with *McGrew*, for we hold that the cancellation of outstanding induction orders followed automatically from the expiration that *McGrew* acknowledged, even though preliminary processing of registrants could have continued after the expiration.

Our conclusion that the 1971 Act did not revive Carrillo's defunct order is likewise not inconsistent with *McGrew's* assessment of the effect of the 1971 Act. *McGrew*, in essence, concluded that, even if the expiration of power to induct deprived the local board of the power preliminarily to process registrants, the 1971 Act nullified that effect. *McGrew* did not speak, and could not properly have spoken, to the effect of the 1971 Act on cancelled induction orders. There is a vast difference between retroactively reinstating induction authority for some purposes and reviving defunct administrative orders. While the *McGrew* court was able to infer that the 1971 Act nullified any impairment of the local boards' power preliminarily to process registrants, we need not, and in light of the legislative history of the 1971 Act cannot, conclude that the Act also reinstated cancelled induction orders.